Dear V. Daniel Palumbo, Esquire
You have requested our opinion whether the Board of Trustees for Prince George's Community College ("Board") may lawfully offer in-county tuition rates to certain students who are neither citizens of the United States nor lawfully admitted to the United States.[1] You indicate that, under a current proposal, the Board would not count such students when it computes full-time equivalent enrollment for the purpose of determining State funding.
In our opinion, the Board lacks the authority to waive the out-of-county tuition rates for undocumented aliens. Maryland law allows the Board to charge a student in-county tuition rates only in specified circumstances, and does not afford the Board the discretion to determine whether to charge such rates in this situation. This conclusion holds true even if the Board were to decide to forgo certain State funding for such students by not counting such a student as a full-time equivalent student.
 I Background
A. Board Proposal
You indicate that the Board is considering a proposal under which it would extend in-county tuition rates to undocumented aliens if they meet the following requirements:
1 The individual has attended a public or private secondary school in the county for at least three years;
2 The individual has graduated from a public or private secondary school in the county or received the equivalent of a high school diploma in the county; and
3 The individual applied to attend the Community College within three years after graduation from secondary school or receipt of the equivalent of a high school diploma.
In addition, you state that the Board would not count any students enrolled under such a policy in computing the Community College's full-time equivalent enrollment for purposes of determining State funding.
You ask whether the Community College may lawfully implement such a policy.
B. State Law Governing Community College Tuition and Fees
The State's community college system is governed by Title 16 of the Education Article of the Annotated Code of Maryland ("ED"). Governance of the community colleges in each county that has one or more such colleges is entrusted to a board of community college trustees. ED § 16-101(a). The State and counties share financial responsibility for the community colleges. ED §§ 16-304, 16-305.
The General Assembly has granted the boards powers to operate the community colleges. See ED § 16-103. Of particular relevance here, "[e]ach board of trustees may charge students reasonable tuition and fees set by it with a view to making college education available to all qualified individuals at low cost." ED § 16-103(j). However, a board's authority to set tuition and fees is limited by statute. For instance, the General Assembly has waived tuition under specified conditions for full-time employees of a college, and for residents of the State who are 60 years of age or older, are retired from the work force because of disability, or are defined as "displaced homemakers." ED § 16-106.
The governing statutes, as well as the regulations of the Maryland Higher Education Commission, establish three basic categories of students for tuition purposes: (1) Residents of the county or counties that support the community college; (2) Maryland residents from outside the county or counties that support the community college; and (3) Out-of-State residents.See COMAR 13B.07.02.03B. An individual's immigration status does not preclude classification as a resident so long as "the individual has the legal capacity to establish domicile in Maryland." COMAR 13B.07.02.03A(3).
With respect to nonresident students, the General Assembly has directed that certain additional fees be paid. ED § 16-310(a) generally provides that any student who attends a community college who is not a resident of Maryland must pay an "out-of-state fee" in addition to the regular tuition and fees payable by a county resident. See also COMAR 13B.07.02.03C(1). The out-of-state fee effectively recovers a State subsidy related to the number of full-time equivalent students in the college, as well as part of the county subsidy.[2] A parallel provision requires any student who attends a community college not supported by the county in which the student resides to pay an additional out-of-county or out-of-region fee designed to recover part of the county subsidy. ED § 16-310(b); COMAR13B.07.02.03C(2).[3]
The statute qualifies the requirement that a board impose an out-of-state or out-of-county fee. The requirement is subject to any interstate reciprocal agreement entered into by the Maryland Higher Education Commission. ED § 16-310(f). In addition, the statute grants in-county status for tuition in certain specified circumstances: a resident of West Virginia who attends Garrett Community College under a negotiated reciprocity agreement between Maryland and West Virginia; a student enrolled in a nursing licensure program; and, under certain conditions, a public school teacher employed by a county board. ED § 16-310(a)(2), (3), (5). The statute grants the board discretion whether or not to waive the out-of-state or out-of-county fee only in the case of a student who is employed by a business located in the county that supports the community college. ED §§ 16-310(a)(4)(i), § 16-310(b)(3). See Chapter 578, Laws of Maryland 2000. If the board waives the out-of-state fee, a student "shall not be included as an in-State resident for computation of State aid to community colleges in accordance with § 16-305 of this subtitle." ED § 16-310(a)(4)(ii).
C. Federal Law
A provision of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) limits education benefits that may be provided to immigrants not lawfully present in the United States. It provides:
 Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration and scope) without regard to whether the citizen or national is such a resident.
8 U.S.C. § 1623(a).
 II Analysis
The proposed policy appears to be an attempt to address the plight of immigrant children who reside in the community. Nationally, there are an estimated 65,000 undocumented high school graduates each year for whom the cost of a college education and the negative prospects for employment discourage pursuit of a college education. Connelly, In Search of theAmerican Dream: An Examination of Undocumented Students, In-StateTuition, and The Dream Act, 55 Cath. U. L. Rev. 193, 194 (2005). While nine states have (as of January 2004) passed legislation allowing undocumented aliens to receive in-state tuition, other states have rejected such legislation in part because of their view that a provision in the IIRIRA preempts states from providing any postsecondary education benefit to unauthorized persons. Id. at 207-08; see also Hard Lessons in ImmigrationLaw, Washington Post (March 9, 2006), p. A01 (noting that the Virginia Attorney General informally advised the state legislature that granting in-state tuition to students with long-standing ties to the state would force schools to afford the same rate to students throughout the country). On the other hand, proponents of extending educational benefits to undocumented students contend that state residency is a state benefit to be determined by states, and Section 1623 does not preclude states' abilities to enact residency statutes for the undocumented. Olivas, IIRIRA, The Dream Act, and Undocumented College StudentResidency, 30 J.C. U.L. 435, 452-53 (2004). No reported court decision has resolved this question.
In our opinion, it is unnecessary to resolve the preemption issue to answer your question, because the Board currently lacks the authority to extend in-county tuition benefits to undocumented aliens. Residency means "a place of fixed present domicile." Blount v. Boston, 351 Md. 360, 364-66, 718 A.2d 1111
(1998). Domicile "has been defined as the place with which [one] has a settled connection for legal purposes." Id. at 367. A lawfully admitted alien who has the legal capacity to establish domicile in Maryland may be classified as a resident for tuition purposes. See COMAR 13B.07.02.03A(3). However, an individual who is neither a citizen of the United States nor lawfully admitted to this country does not have the legal capacity to be domiciled in Maryland. Toll v. Moreno, 284 Md. 425, 442-43,397 A.2d 1009 (1979) ("If under federal law a particular individual . . . cannot remain here indefinitely, then he could not become domiciled in Maryland"). Thus, an undocumented alien may not be considered a county resident.
While the Legislature has directed that in-county tuition rates be provided for certain individuals who are not county residents,see ED § 163-10(a) (2), (3), (5), it has not granted in-county rates to the class of students the Board proposes to assist. Nor has the Legislature granted the Board the discretion to extend the lower tuition rates to this class of students. Only in the case of a student who is employed by a business located in the county that supports the community college does the Board have discretion to waive the additional out-of-state and out-of-county fees. ED § 16-310(a)(4), (b)(3).
It is unlikely that the General Assembly intended to permit the Board to adopt the policy described in your letter when it has specifically waived the out-of-state fee for three categories of students and authorized boards of trustees to exercise discretion to waive the fee for only one category of students. If the General Assembly believed that boards already possessed the authority to waive such fees, it would have been unnecessary for it grant them authority to do so in the case of a student employed by a county business.[4]
The fact that the Board is willing to forgo State aid as part of its policy does not change our conclusion. It is true that, if a board of trustees decides to grant a tuition waiver for a student who is employed by a business located in the county that supports the community college, the student is not included as an in-State resident for computation of State aid. ED § 16-310(4)(ii). However, nothing in the statute authorizes a board to grant a tuition waiver in other circumstances simply by virtue of the fact that it is willing to forgo State aid for those students.
 IV Conclusion
For the reasons stated above, it is our opinion that the Board lacks the authority to waive the out-of-county tuition rates for undocumented aliens. Maryland law allows the Board to charge a student in-county tuition rates only in specified circumstances, and does not afford the Board the discretion to determine whether to charge such rates in this situation. This conclusion holds true even if the Board were to decide to forego certain State funding for such students by not counting such a student as a full-time equivalent student for purposes of receiving State funding. The Board's implementation of such a proposal must await the passage of authorizing legislation by the General Assembly.
 J. Joseph Curran, Jr. Attorney General
 Mark J. Davis Assistant Attorney General
 Robert N. McDonald Chief Counsel Opinions and Advice
[1] For brevity's sake, we refer to such students as "undocumented aliens."
[2] The out-of-state fee is to be at least equal to:
 (i) 60% of the county share per full-time equivalent student as determined under § 16-305 of this subtitle; and
 (ii) The marginal cost component of the State share per full-time equivalent student as determined under § 16-305(c)(5) of this subtitle.
ED § 16-310(a)(1). Section 16-305 provides a formula for the distribution of funds to the community colleges in the State, which is known as the Senator John A. Cade Funding Formula.
[3] The out-of-county fee is to be "at least equal to 60% of the county share per full-time equivalent student as determined under [the statutory funding formula]." ED § 16-310(b)(1).
[4] As your letter describes, the General Assembly has considered legislation that would have authorized in-county tuition benefits for students who are undocumented aliens. See
House Bill 426 (2002); House Bill 253 (2003). The 2002 bill passed the House but failed to pass the Senate. The 2003 bill, which would have exempted students from paying nonresident tuition on conditions somewhat similar to the Board's proposal, passed both houses of the General Assembly and was approved by this Office for legal sufficiency and constitutionality. However, the bill was vetoed by the Governor. The failed attempt to enact such legislation, while not conclusive on the issue, supports the conclusion that the Board currently lacks authority to provide such benefits. See Comptroller v. Clyde's of Chevy Chase, Inc.,377 Md. 471, 505, 833 A.2d 1014 (2003). *Page 99